UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**FEQUIERE FREDERIC, on behalf of himself
and on behalf of all others
similarly situated,**

      **Plaintiff,**

v.                          **Case No.:**

**LYFT, INC. d/b/a LYFT FLORIDA, INC.,**

      **Defendant.**
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, FEQUIERE FREDERIC ("Plaintiff"), by and through the undersigned counsel, on behalf of himself and on behalf of all others similarly situated, brings this Complaint against Defendant, LYFT, INC. d/b/a LYFT FLORIDA, INC. ("Defendant" or "LYFT"), and in support of his claims states as follows:

### PRELIMINARY STATEMENT

1.    This Complaint is filed as a collective action under 29 U.S.C. § 216(b), and as a class action under Federal Rule of Civil Procedure 23(b)(1), and is brought by and on behalf of persons who are or have been at some time employed during the applicable limitations period as drivers for LYFT, a Delaware Corporation with its principal place of business in California, in the business of providing taxi or transportation services to the general public.

2.    This is a collective action and a class action which challenges LYFT's uniform policy of willfully misclassifying its drivers as independent contractors when, in fact, each such driver is and/or was an employee of LYFT.

3.     As a result of LYFT's unlawful misclassification of its drivers as independent contractors, LYFT has uniformly violated the requirements of the Fair Labor Standards Act, as amended ("FLSA," 29 U.S.C. § 201 *et seq*.), and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA," Fla. Stat. § 501.201 *et seq*.), by, among other things:

(a) Failing to pay its drivers at least the minimum wage required by Federal law for every hour worked;

(b) Failing to pay its drivers overtime compensation for hours worked in excess of 40 hours in one week; and,

(c) Subjecting its drivers to citations and criminal charges for operating without a proper permit.

## PARTIES

4.     Plaintiff is a resident of Hillsborough County, Florida. Between January 2013 and October 2014, Plaintiff worked for LYFT as a driver in Tampa, Florida.

5.     Defendant LYFT is a corporation, organized under the laws of the state of Delaware, which is licensed to conduct business in the state of Florida, and which does conduct substantial business on a regular and continuous basis in Florida. LYFT's principal place of business is in San Francisco, California.

## JURISDICTION AND VENUE

6.     This Court has federal question jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331. Supplemental jurisdiction over Plaintiff's FDUTPA claims is appropriate under 28 U.S.C. § 1367.

7.     Venue is proper in the United States District Court, Middle District of Florida, pursuant to 28 U.S.C. § 1391. Plaintiff resides in Riverview, Florida, worked for Defendant in

Tampa, Florida, and his claims arose, in substantial part, in Tampa, Florida. Defendant regularly conducts business in Tampa, Florida and is thus subject to personal jurisdiction in this district.

## ALLEGATIONS REGARDING DEFENDANT'S BUSINESS PRACTICES

8.     Defendant LYFT is a transportation or taxi business. Through a mobile phone software application, LYFT connects local travelers who seek transportation via automobile with local drivers ("Class Members") who have been screened, trained, controlled, and are paid by LYFT.

9.     All LYFT drivers must abide by all of LYFT's uniform rules, regulations, and policies.

10.     LYFT operates much like a taxi cab service. Customers who wish to pay for local transportation via automobile log on to a mobile phone application and enter information regarding, among other things, where they wish to be picked up and where they wish to be dropped off. Then, through its software application, LYFT sends each customer's information to a local LYFT driver.

11.     The LYFT driver, with an easily identifiable pink mustache provided by LYFT which, pursuant to LYFT's uniform rules, must be affixed to the front of every driver's vehicle, then picks up the customer and transports the customer to the desired destination.

12.     Each LYFT customer pays for the service by paying LYFT directly via credit card based on an amount calculated solely by LYFT and based on the miles driven and the amount of time it took to reach the destination, plus any gratuity which the customer wishes to give to the driver.

13.     All payments from the customer, including gratuities, must be paid by the customer directly to LYFT. LYFT rules do not permit its drivers to accept any type of payment

from its customers.  Instead, LYFT pays each of its drivers a portion of the amount received from the customer (i.e., a portion of the charge for the service and a portion of any gratuity), as determined solely by LYFT.

14.     In an effort to avoid providing its drivers with the minimum benefits and protections afforded employees under the FLSA and Florida law, LYFT has willfully, uniformly, and unilaterally classified each and every one of its drivers as independent contractors, rather than employees, despite the fact that the factual circumstances of the relationship between LYFT and its drivers clearly demonstrate that LYFT drivers are in fact employees of the company.

15.     Under the FLSA and Florida law, LYFT drivers should be considered employees for, among others, the following reasons:

(a) LYFT retains the right to control, and in fact does control, the manner and means by which all LYFT drivers accomplish their work;

(b) LYFT retains the right to hire and fire drivers in its sole discretion;

(c) LYFT retains the right to terminate the LYFT "Platform" and the LYFT application, or to block drivers from using the Platform and/or application, which effectively gives LYFT the ability to prevent its drivers from picking up Riders, working, and earning an income;

(d) LYFT takes a 20% "administration fee" from each driver's gratuities left by the customer for the driver;

(e) Drivers do not engage in business distinct from that of LYFT;

(f) LYFT requires that each driver place a large pink mustache on the front of their car while transporting a Rider to identify the driver's car as a LYFT vehicle;

(g) LYFT sets all rates of pay for its drivers and prohibits its drivers from setting rates of pay for their services;

(h) LYFT requires its drivers to consent to receiving emails and text messages from LYFT, all of which the drivers are required to pay for receiving at the rate charged by their mobile phone service providers, including without limitation, notification emails, emails or text messages informing drivers about potential available Riders, and emails or text messages regarding LYFT promotions which drivers are required to abide by;

(i) LYFT unilaterally and in its sole discretion requires each driver to accept any and all discount promotion offers to customers;

(j) LYFT requires each driver to engage in a two hour training session before being permitted to work as a LYFT driver, including the viewing of training videos, which, inter alia, instructs drivers regarding LYFT's requirements for how they are to interact with Riders;

(k) LYFT requires that each driver ensure that his or her vehicle comply with LYFT's requirements for appearance and cleanliness;

(l) LYFT retains the right to discipline its drivers in its sole discretion;

(m) LYFT limits the geographical locations in which its drivers are permitted to work, and restricts its drivers' ability to transport customers more than 60 miles;

(n) LYFT advertizes that its drivers receive an hourly rate of pay;

(o) LYFT restricts its drivers ability to work and earn income by only permitting them to work certain hours each day;

(p) LYFT prohibits its drivers from hiring other employees to assist them; and,

(q) LYFT requires its drivers to respond to and accept all customer ride requests unless they are transporting another customer at the time.

16.     As a result of LYFT's uniform misclassification of its drivers as independent contractors, LYFT does not pay its drivers a wage for each hour, or portion thereof, that they work. Instead, LYFT pays its drivers using a formula, derived and determined solely by LYFT, based on and related in some way to the amount LYFT receives from its customers. The consequences of this practice are, without limitation, that LYFT drivers: (1) are not paid for all of the hours that they actually work; (2) are not paid at least the minimum wage required by Federal law for each hour worked; and, (3) are not paid overtime compensation for hours that they actually work in excess of 40 hours in one week.

17.     In addition, these unlawful employment practices have also resulted in LYFT's drivers receiving citations and facing criminal charges for operating without a proper permit. LYFT's drivers who have been charged with criminal violations must perform hours of community service for no compensation, and receive permanent documentation of the charges on the drivers' criminal record or must pay to have these records sealed.

## COLLECTIVE ACTION ALLEGATIONS

18.     Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated (the "Class"), namely drivers who, at any time during the period from June 18, 2012, to the present (the "Class Period"), have worked, or currently work, as a driver for LYFT.

19.     Plaintiff is and has been a member of the proposed Class described herein.

20.     The number of persons in the proposed Class herein is so numerous that joinder of all such persons would be impracticable. While the exact number and identities of all such

6

persons are unknown to Plaintiff at this time and can only be obtained through appropriate discovery, Plaintiff is informed and believes, and on that basis alleges, that the proposed Class herein includes over 1,000 persons.

21.    Disposition of Plaintiff's claims in a collective action will benefit all parties and the Court.

22.    There is a well-defined community of interest presented by the proposed Class herein in that, among other things, each member of the proposed Class has an interest in receiving the minimum compensation required by the FLSA for the hours they have worked for Defendant, obtaining other appropriate legal relief for the harm of which Plaintiff complains, and obtaining other adequate compensation for the common damages which Plaintiff and all other persons similarly situated have suffered as a result of Defendant's actions.

23.    Each Class Member herein has performed labor for Defendant at Defendant's request at some time during the Class Period for which they have not been properly compensated, in that they have not received the minimum compensation required by the FLSA.

24.    A collective action in this case is superior to any other available method for the fair and efficient adjudication of the claims presented herein.

25.    The prosecution of separate actions by individual members of the proposed Class herein would create a risk of inconsistent and/or varying adjudications with respect to individual members of the proposed Class which would or may establish incompatible standards of conduct for Defendant and which would also create a risk of adjudications with respect to individual members of the proposed Class herein which would, as a practical matter, be dispositive of the interests of other members of the proposed Class not parties to the particular individual

adjudications, and/or would or may substantially impede or impair the ability of those other members to protect their interests.

26.     Common questions of law and fact exist in this case with respect to the proposed Class which predominate over any questions affecting only individual members of the Class and which do not vary between members thereof.

27.     At some time during the Class Period, all of the individuals in the proposed Class herein have been employed by Defendant as drivers and have been unlawfully subjected to a uniform and consistent set of unfair employment practices, as described more fully herein.

28.     All members of the proposed Class herein have worked in excess of 40 hours in a week at some time during the Class Period, but have been deprived of their legal rights, guaranteed by the FLSA, to be paid a premium wage for such overtime hours.

29.     The common questions of fact involved in this case include, without limitation, whether each member of the proposed Class herein have: (1) worked hours during the Class Period for which they have not been paid at least the minimum wage required by Federal law; and, (2) worked hours in excess of 40 in a week during the Class Period but have not been paid premium overtime compensation as required by the FLSA..

30.     The common questions of law involved in this case include, without limitation: (1) whether Class Members performed labor for Defendant as employees or as independent contractors; (2) whether Defendant has violated the FLSA by failing to pay its driver employees at least the legally required minimum wage for each and every hour worked; (3) whether Defendant has violated overtime compensation requirements under the FLSA by failing to pay its driver employees for hours worked in excess of 40 in a week; and, (4) whether Plaintiff and

those other persons similarly situated are entitled to general and/or special damages as a result of any of the legal violations complained of herein, and the nature of such damages.

31.     The claims of the named Plaintiff in this case are typical of those of the other Class Members which he seeks to represent, in that, among other things, Plaintiff and each other Class Member have sustained damages and are facing irreparable harm because of, and arising out of, a common course of conduct engaged in by Defendant as complained of herein.

32.     The claims of the named Plaintiff herein are coincident with, and not antagonistic to, the claims of other Class Members which the named Plaintiff seeks to represent.

33.     The named Plaintiff herein will fairly and adequately represent and protect the interests of the members of the proposed Class which he seeks to represent.  Plaintiff does not have any interests which are antagonistic to the interests of the proposed Class herein.

34.     Counsel for Plaintiff herein are experienced, qualified and generally able to conduct complex collective action legislation.

35.     By virtue of Defendant's unlawful failure to pay Class Members the minimum compensation required by Federal law, Defendant has received substantial sums of money, and has realized profits from the unpaid labor of literally thousands of employees during the applicable limitations period.

36.     At all times relevant hereto, the FLSA was, and continue to be, in full force and effect, and the Defendant herein was, and continues to be, bound thereby.

37.     The relief sought in this action is necessary to restore to members of the proposed Class the money and property which Defendant has illegally acquired through the unlawful treatment of each Class Member as described herein.

## FIRST CLAIM FOR RELIEF (AS TO COLLECTIVE ACTION)

### Failure to Pay Minimum Wage in Violation of FLSA

38.     Plaintiff re-alleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 37 of this Complaint

39.     Defendant is the employer of Plaintiff and all other Class Members.

40.     Defendant willfully and uniformly misclassified Plaintiff and all other Class Members as independent contractors when in fact each such Class Member was and/or is an employee of LYFT.

41.     The FLSA provides that any employee who receives less than the legal minimum wage applicable to the employee is entitled to recover in a civil action the difference between what the employee was paid and the amount the employee should have been paid, known as back pay, and an equal amount as liquidated damages, plus attorney's fees and court costs.

42.     The FLSA provides that the applicable minimum wage that an employee is entitled to is the higher of the Federal minimum wage and the applicable State minimum wage. The Federal minimum wage during the Class Period is $7.25 per hour.

43.     Defendant has failed to pay Plaintiff, and all other Class Members similarly situated, at least the legally required minimum wage for some portion of the hours that each such person worked as a driver for LYFT during the Class Period.

44.     Defendant's failure to pay Plaintiff, and such other Class Members, at least the minimum wages as required by law, violates the provisions of the FLSA.

45.     By virtue of Defendant's unlawful failure to pay minimum wages to Plaintiff and all other Class Members when due, all such persons have suffered, and continue to suffer, damages in amounts which are presently unknown to Plaintiff but which will be ascertained according to proof at trial.

46.    Pursuant to the FLSA, Plaintiff and all other similarly situated Class Members are entitled to recover from Defendant the full balance of any and all unpaid minimum wages, plus attorney's fees and court costs.

## SECOND CLAIM FOR RELIEF (AS TO COLLECTIVE ACTION)

### Failure to Pay Overtime Compensation in Violation of FLSA

47.    Plaintiff re-alleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 46 of this Complaint.

48.    The FLSA provides that employees shall not be employed more than 40 hours in one week, unless they receive additional compensation beyond their regular rate of pay in amounts specified by law.

49.    The FLSA provides that an employee who has not been paid overtime compensation may recover, in a civil action, the unpaid balance of the full amount of such overtime compensation, liquidated damages equal to the full amount of unpaid overtime compensation or an award of prejudgment interest, plus attorney's fees and court costs.

50.    At all time relevant hereto, from time to time, Plaintiff, and all other Class Members similarly situated, have worked more than 40 hours in a week, as drivers for LYFT.

51.    At all times relevant hereto, Defendant has failed to pay Plaintiff, and to all other similarly situated Class Members, premium overtime compensation for the hours they have worked in excess of 40 hours in one week.

52.    Defendant has failed and refused, and continues to fail and refuse, to pay Plaintiff and all other similarly situated Class Members the amounts owed by Defendant for unpaid overtime compensation.

11

53.     By virtue of Defendant's unlawful failure to pay premium overtime compensation to Plaintiff and all other similarly situated Class Members, all such persons have suffered and continue to suffer, damages in amounts which are presently unknown to Plaintiff but which will be ascertained according to proof at trial.

54.     Plaintiff, and all other similarly situated Class Members, are also entitled to recover the full amount of unpaid overtime compensation, plus attorney's fees and court costs.

## PRAYER FOR RELIEF (AS TO COLLECTIVE ACTION)

WHEREFORE, Plaintiff and all similarly situated persons who join this collective action demand as follows:

## COLLECTIVE ACTION CERTIFICATION

A.     Designation of this action as a collective action on behalf of the Plaintiff and the prospective Class that he seeks to represent;

B.     Prompt issuance of notice pursuant to 29 U.S.C § 216(b) to all similarly situated members of the Class, apprising them of the pendency of this action and permitting them to assert timely claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b);

C.     Equitable tolling of the statute of limitations from the date of the filing of this Complaint until the expiration of the deadline for filing consent to sue forms under 29 U.S.C. § 216(b);

D.     Leave to add additional Plaintiffs by motion, the filing of written consent forms, or any other method approved by this Court.

## FIRST CLAIM FOR RELIEF PRAYER

### Failure to Pay Minimum Wage in Violation of FLSA

12

A.     Judgment against Defendant for an amount equal to Plaintiff's and the Class's unpaid back wages at the applicable statutory minimum wage;

B.     Judgment against Defendant stating that Defendant's violations of the FLSA were willful;

C.     An amount equal to the Plaintiff's and the Class's minimum wage damages as liquidated damages;

D.     To the extent that liquidated damages are not awarded, an award of prejudgment interest;

E.     A declaration that Defendant's practices as to Plaintiff and the Class were unlawful, and grant Plaintiff and the Class equitable relief;

F.     All costs and attorney's fees incurred in prosecuting these claims; and,

G.     For such further relief as this Court deems just and equitable.

### SECOND CLAIM FOR RELIEF PRAYER

**Failure to Pay Overtime Compensation in Violation of FLSA**

A.     Judgment against Defendant for an amount equal to Plaintiff's and the Class's unpaid back wages at the applicable overtime rate;

B.     Judgment against Defendant stating that Defendant's violations of the FLSA were willful;

C.     An amount equal to the Plaintiff's and the Class's overtime damages as liquidated damages;

13

D.    To the extent that liquidated damages are not awarded, an award of prejudgment interest;

E.    A declaration that Defendant's practices as to Plaintiff and the Class were unlawful, and grant Plaintiff and the Class equitable relief;

F.    All costs and attorney's fees incurred in prosecuting these claims; and,

G.    For such further relief as this Court deems just and equitable.

## CLASS ACTION ALLEGATIONS

55.    Plaintiff asserts his Rule 23 class claims on behalf of a Putative Class defined as follows:

**All persons employed by LYFT as drivers in Florida within four years of the filing of this complaint through the date of final judgment in this action.**

56.    Plaintiff is and has been a member of the Putative Class described herein.

57.    The number of persons in the Putative Class herein is so numerous that joinder of all such persons would be impracticable.  While the exact number and identities of all such persons are unknown to Plaintiff at this time and can only be obtained through appropriate discovery, Plaintiff is informed and believes, and on that basis alleges, that the Putative Class herein includes over 1,000 persons.

58.    Disposition of Plaintiff's claims in a class action will benefit all parties and the Court.

59.    There is a well-defined community of interest presented by the Putative Class herein in that, among other things, each member of the Putative Class has an interest in being classified as an employee rather than an independent contractor, obtaining other appropriate legal

14

relief for the harm of which Plaintiff complains, and obtaining other adequate compensation for the common damages which Plaintiff and all other persons similarly situated have suffered as a result of Defendant's actions.

60.     Each Class Member herein has performed labor for Defendant at Defendant's request at some time during the Class Period, while the Class was unlawfully misclassified as independent contractors.

61.     A class action in this case is superior to any other available method for the fair and efficient adjudication of the claims presented herein.

62.     The prosecution of separate actions by individual members of the Putative Class herein would create a risk of inconsistent and/or varying adjudications with respect to individual members of the Putative Class which would or may establish incompatible standards of conduct for Defendant and which would also create a risk of adjudications with respect to individual members of the Putative Class herein which would, as a practical matter, be dispositive of the interests of other members of the Putative Class not parties to the particular individual adjudications, and/or would or may substantially impede or impair the ability of those other members to protect their interests.

63.     Common questions of law and fact exist in this case with respect to the Putative Class which predominate over any questions affecting only individual members of the Class and which do not vary between members thereof.

64.     At some time during the Class Period, all of the individuals in the Putative Class herein have been employed by Defendant as drivers and have been unlawfully subjected to a uniform and consistent set of unfair employment practices, as described more fully herein.

65.     The common questions of fact involved in this case include, without limitation, whether each member of the Putative Class herein have: (1) been subjected to the same companywide policies and practices related to the manner and means by which they accomplish their work, their compensation, time keeping, and record keeping; and, (2) been subjected to citations and/or criminal charges for operating without a proper permit.

66.     The common questions of law involved in this case include, without limitation: (1) whether Class Members performed labor for Defendant as employees or as independent contractors; (2) whether Defendant's uniform policies and practices related to the relationship between LYFT and its drivers are unlawful, unfair, and/or deceptive business practices in violation of FDUTPA; and, (3) whether Plaintiff and those other persons similarly situated are entitled to general and/or special damages as a result of any of the legal violations complained of herein, and the nature of such damages.

67.     The claims of the named Plaintiff in this case are typical of those of the other Class Members which he seeks to represent, in that, among other things, Plaintiff and each other Class Member have sustained damages and are facing irreparable harm because of, and arising out of, a common course of conduct engaged in by Defendant as complained of herein.

68.     The claims of the named Plaintiff herein are coincident with, and not antagonistic to, the claims of other Class Members which the named Plaintiff seeks to represent.

69.     The named Plaintiff herein will fairly and adequately represent and protect the interests of the members of the Putative Class which he seeks to represent.  Plaintiff does not have any interests which are antagonistic to the interests of the Putative Class herein.

70.     Counsel for Plaintiff herein are experienced, qualified and generally able to conduct complex class action legislation.

71.    At all times relevant hereto, the FDUTPA was, and continue to be, in full force and effect, and the Defendant herein was, and continues to be, bound thereby.

72.    The relief sought in this action is necessary to restore to members of the Putative Class the money and property which Defendant has illegally acquired through the unlawful treatment of each Class Member as described herein.

73.    Plaintiff intends to send notice to all members of the Putative Class to the extent required by Fed. R. Civ. P. 23. The names and addresses of the Putative Class members are available from Defendant's records.

## THIRD CLAIM FOR RELIEF (AS TO CLASS ACTION)

### Violations of Florida Deceptive and Unfair Trade Practices Act

74.    Plaintiff re-alleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 73 of this Complaint.

75.    This is an action for damages, plus attorney's fees and court costs, pursuant to FDUTPA.

76.    Plaintiff, and all other similarly situated Class Members, fall within the definition of a "person" within the meaning of FDUTPA, including Fla. Stat. § 511.211(2).

77.    LYFT is engaged in "trade or commerce" within the meaning of FDUTPA.

78.    In violation of FDUTPA, LYFT engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of its trade and commerce, and have thereby deprived Plaintiff, and all persons similarly situated, of fundamental rights and privileges guaranteed to all employees under Florida law.

**Subjecting Employees to Criminal Charges in Violation of FDUTPA**

79.     By and through the conduct described above, Plaintiff, and all persons similarly situated, have been deprived of their rights by subjecting drivers to civil citations and criminal charges for illegally operating public vehicles.

80.     By and through the conduct described above, Defendant has failed to provide its driver employees with proper insurance, vehicle inspections, and/or background checks, in violation of State law.

81.     As a result of Defendant's unfair, unlawful, and/or deceptive business practices described herein, Plaintiff and members of the Putative Class have received civil citations and/or criminal charges for operating public vehicles in violation of State transportation laws.

82.     As a result of Defendant's unfair, unlawful, and/or deceptive business practices described herein, Plaintiff and members of the Putative Class have received citations for operating a public vehicle without certification, unlawful operation, and not having proper insurance.

83.     As a result of Defendant's unfair, unlawful, and/or deceptive business practices described herein, Plaintiff and members of the Putative Class have faced criminal misdemeanor charges, had to appear in court on account of these charges, and been forced to perform community service hours and/or pay to have criminal records sealed at their own expense.

84.     According to the Hillsborough County Public Transportation Commission's Executive Director, "[LYFT and Uber are] operating illegally currently and we are still enforcing specific state laws against them that comes in the form of ticketing their drivers."   Johana Bhuiyan, *Uber And Lyft's Bitter Battle For Tampa*, BuzzFeed News (June 16, 2015, 11:30 am), http://www.buzzfeed.com/johanabhuiyan/uber-and-lyfts-bitter-battle-for-tampa#.ms6y2ZypBo.

## Improper Classification of Employees in Violation of FDUTPA

85.     In an effort to avoid providing its drivers with the minimum benefits and protections afforded employees under Florida law, LYFT has willfully, uniformly, and unilaterally classified each and every one of its drivers as independent contractors, rather than employees, despite the fact that the factual circumstances of the relationship between LYFT and its drivers clearly demonstrate that LYFT drivers are in fact employees of the company.

86.     The actions of Defendant, in misclassifying Plaintiff's, and all members of the Putative Class's, employment, are unfair and deceptive trade practices prohibited by Florida Statutes.

87.     By and through LYFT's unfair, unlawful, and/or deceptive business practices described herein, Plaintiff and all other Class Members have suffered injury in fact in that Defendant has obtained valuable property, money and/or services from Plaintiff and all other Class Members, and have deprived Plaintiff, and all other Class Members, of valuable rights and benefits guaranteed by law.

88.     All of the acts described herein are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, fraudulent, and/or unscrupulous, and thereby constitute unfair, unlawful and/or deceptive business practices in violation of FDUTPA.

89.     Plaintiff, and all persons similarly situated, are entitled to and do seek such relief as may be necessary to restore to them the money and property which Defendants have acquired, or of which Plaintiff, and all others similarly situated, have been deprived, by means of the above-described unfair, unlawful and/or deceptive business practices.

90.     Plaintiff, and all persons similarly situated, are further entitled to and do seek a declaration that the above described business practices are unfair, unlawful and/or deceptive, and

injunctive relief restraining Defendant from engaging in any of the above-described unfair, unlawful and/or deceptive business practices in the future.

91.    As a result of the unfair, unlawful and/or deceptive business practices described herein, Plaintiff, and all persons similarly situated, have suffered and will continue to suffer irreparable harm unless Defendant is restrained from continuing to engage in said unfair, unlawful and/or deceptive business practices.

## PRAYER FOR RELIEF (AS TO CLASS ACTION)

WHEREFORE, Plaintiff and all similarly situated persons who join this class action demand as follows:

### CLASS ACTION CERTIFICATION

1.    Determining that this action may proceed as a class action under Rule 23(b)(1), and (2) and (3) of the Federal Rules of Civil Procedure;

2.    Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Putative Class;

3.    Issuing proper notice to the Putative Class at Defendant's expense.

### THIRD CLAIM FOR RELIEF PRAYER

**Violations of Florida Deceptive and Unfair Trade Practices Act**

1.    Judgment against Defendant and a determination by the Court that Defendant violated the FDUTPA;

2.    Plaintiff's and the Class's actual damages;

3.    All costs and attorney's fees incurred in prosecuting these claims; and,

4.    For such further relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues so triable.

Dated this _____ day of July, 2015.

Respectfully submitted,

**BRANDON J. HILL**
Florida Bar Number: 37061
Direct: 813-337-7992
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Avenue
Suite 300
Tampa, Florida 33602
Main: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: jriley@wfclaw.com
**Attorney for Plaintiff**